IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| USPRO COATINGS & BUILDING RESTORATION, INC., | : : : : |
| Plaintiff, | : : |
| v. | CIVIL ACTION NO. 10-1715 : : |
| DIG-HP CHERRY HILL OPERATING, LLC *et al.*, | : : |
| Defendants. | : |

**MEMORANDUM**

YOHN, J.                                                                                                          February 8, 2011

      USPro Coatings & Building Restoration, Inc. ("USPro") brings this action against DIG-HP Cherry Hill Operating, LLC ("DIG-HP") and Hirschfeld Properties, LLC ("Hirschfeld Properties"), alleging breach of contract against both defendants and tortious interference with contractual relations against Hirschfeld Properties. Before me is Hirschfeld Properties' motion to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, I will deny Hirschfeld Properties' motion to dismiss the breach-of-contract claims but will grant its motion to dismiss the tortious-interference claim.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

      USPro is in the business of restoring building exteriors and applying coatings to protect their exterior surfaces. (Am. Compl. ¶ 1.) In March 2009, USPro submitted proposals to

---

[1] The following summary is based on the allegations in USPro's amended complaint, which I assume to be true for purposes of Hirschfeld Properties' motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Hirschfeld Properties for a project in Cherry Hill, New Jersey, which was to include the removal of balcony railings, the repair of balconies as needed, and the application of a balcony sealant system. (*Id.* ¶ 6.) According to USPro, "[d]uring the proposal and negotiation process, a senior vice president of Hirschfeld Properties touted Hirschfeld Properties' success as a real estate investment firm with enormous financial resources." (*Id.* ¶ 7.) USPro also investigated Hirschfeld Properties' reputation by, among other things, "reviewing [the company's] website and conducting a search through various court dockets to determine Hirschfeld Properties' propensity for litigation and conflict with its vendors." (*Id.* ¶ 8.) USPro asserts that Hirschfeld Properties' reputation and financial resources factored into the terms of its proposal as well its ultimate decision to enter into an agreement with Hirschfeld Properties. (*Id.* ¶¶ 7, 9.)

USPro alleges that Hirschfeld Properties awarded the project to USPro on March 10, 2009, and, according to USPro, the two parties executed an agreement concerning the project, including the amount of compensation to be paid to USPro, on that date. (*Id.* ¶¶ 10–11.) Hirschfeld Properties authorized USPro to begin work on the project, and USPro agreed to accept Hirschfeld Properties' "forthcoming contract form" and to meet Hirschfeld Properties' request for heightened insurance coverage. (*Id.* ¶ 12.) According to USPro, the proposed contract that Hirschfeld Properties sent to USPro repeated the terms of the earlier agreement between the two parties, but "Hirschfeld Properties authorized DIG-HP to execute the contract on its behalf." (*Id.* ¶ 14.)

The contract specified "a three-component balcony sealant system" composed exclusively of products manufactured by Sika Corporation and directed USPro to submit Sika's color charts "for defendants' review and approval." (*Id.* ¶¶ 16–17.) USPro submitted the color charts, as

2

required, but defendants allegedly refused to select a color from Sika's color charts and Hirschfeld Properties instead ordered USPro to match the color of a mock-up balcony sealed in December 2008, even though "USPro had no hand in sealing the mock-up balcony" and the contract made no reference to that mock-up balcony or to color matching. (*Id.* ¶¶ 18–21.) The contract set forth a procedure for "extra work or changes," but defendants refused to issue a change order as required by the contract and threatened to withhold payment or terminate the contract if USPro failed to provide such color-matching services. (*Id.* ¶¶ 22–23.) USPro contends that "[d]efendants' refusal to select a color from [Sika's] color charts made it absolutely impossible for USPro to complete the [p]roject in accordance with the contract." (*Id.* ¶ 24.)

USPro submitted its first application for payment for work performed, requesting payment of $69,996.00 on April 16, 2009, but USPro received payment of only $53,126.00. (*Id.* ¶ 25.)

On April 24, 2009, DIG-HP issued a change order, which USPro asserts was negotiated and accepted by Hirschfeld Properties, directing USPro to furnish and install caulking manufactured by Sika in exchange for a payment of $31,280.00. USPro completed the work as requested under the change order, but defendants allegedly failed to pay for such work. (*Id.* ¶¶ 26–27.)

On May 18, 2009, USPro submitted a second application for work performed, requesting payment of $79,110.00, but, "[d]espite repeated demands, defendants refused to pay for the work performed." (*Id.* ¶ 28.) USPro submitted its last request for payment on May 20, 2009, requesting payment of $22,121.35, but, according to USPro, "[n]o part of this sum has been paid." (*Id.* ¶ 29.) USPro asserts that it e-mailed its applications and requests for payment to Hirschfeld

Properties and that "[a]t no time did Hirschfeld Properties inform USPro that it would not accept such documents." (*Id.* ¶ 30.)

Hirschfeld Properties unilaterally terminated the contract on May 31, 2009, and, according to USPro, refused to pay the amounts due to USPro primarily because USPro failed to match the color of the mock-up balcony. (*Id.* ¶ 31.)

USPro filed this action against DIG-HP and Hirschfeld Properties on April 19, 2010, alleging three breach-of-contract counts against both defendants.[2] USPro alleges that defendants breached the contract (1) by failing to select a color from the color charts and demanding that USPro perform extra work or changing the scope of the work to be performed without additional compensation and without a change order, as required by the contract (count I); (2) by failing to pay the amounts due to USPro under its first and second applications for payment (count II); and (3) by failing to pay for work completed pursuant to change orders (count III).

On June 14, 2010, Hirschfeld Properties filed a motion to dismiss the claims against it for lack of subject-matter jurisdiction under Rule 12(b)(1) or, in the alternative, to dismiss for failure to state a claim under Rule 12(b)(6). USPro filed an amended complaint in response to the motion to dismiss on July 2, 2010, adding allegations regarding Hirschfeld Properties' role with respect to the contract as well as allegations supporting this court's subject-matter jurisdiction on the basis of diversity of citizenship.[3] USPro also added a claim of tortious interference with

---

[2] USPro also alleged a fourth count titled "principal-agent relationship." A principal-agent relationship, however is not a separate cause of action but rather a means of imposing liability for an underlying cause of action, such as breach of contract.

[3] USPro asserts that this court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because USPro is a Pennsylvania corporation with its principal place of business in Wynnewood, Pennsylvania; DIG-HP is a New Jersey business entity with its principal place of

contractual relations against Hirschfeld Properties (count V), asserting, in the alternative, that Hirschfeld Properties interfered with USPro's contract with DIG-HP by, among other things, demanding that USPro provide color-matching services not required under the contract and refusing to provide additional compensation for such extra work. Because USPro amended its complaint, on July 7, 2010, I dismissed Hirschfeld Properties' motion to dismiss as moot. Hirschfeld Properties then filed, on July 19, 2010, the current motion to dismiss the claims against it in the amended complaint for failure to state a claim under Rule 12(b)(6).

DIG-HP, however, has not answered USPro's amended complaint, and on November 16, 2010, the clerk entered a default against DIG-HP.

## II.   DISCUSSION

Hirschfeld Properties seeks to dismiss the three breach-of-contract claims as well as the tortious-interference claim against it, in both cases arguing that USPro has failed to state a claim upon which relief may be granted.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "that are 'merely consistent with' a defendant's liability," or that permit the court to infer no more than "the mere possibility of misconduct" are not enough. *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 557). Rather, the plaintiff must plead "factual content that allows the court

---

business in Cherry Hill, New Jersey; and Hirschfeld Properties is a New York business entity with its principal place of business in New York, New York; and the amount in controversy, as pleaded in the amended complaint, exceeds $75,000. (Am. Compl. ¶¶ 1–3, 4.)

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. In evaluating a motion to dismiss, "the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11; *see also Iqbal*, 129 S. Ct. at 1950 (asserting that a court should assume the veracity of well-pleaded factual allegations, but legal conclusions "are not entitled to the assumption of truth").

### A. Breach of Contract

Hirschfeld Properties argues that USPro has failed to state a claim against it for breach of contract because it was not a party to the contract between USPro and DIG-HP. USPro contends, however, that DIG-HP executed the contract as Hirschfeld Properties' agent and that Hirschfeld Properties is therefore bound by the contract and may be held liable for breach of the contract.

"As a general rule, a principal may be bound to contracts executed by an agent if it is within the agent's authority to contract on behalf of that principal." *E. Paul Kovacs & Co. v. Alpert*, 429 A.2d 829, 832 (Conn. 1980) (citing, among other authorities, Restatement (Second) of Agency §§ 140, 186).[4] This rule applies even where, as here, the principal is not named in the

---

[4] Hirschfeld Properties asserts, without citing any authority or providing any analysis, that Connecticut law governs the question whether there is an agency relationship between Hirschfeld Properties and DIG-HP and whether Hirschfeld Properties, as principal, may be liable for breach of the contract, because the contract between USPro and DIG-HP provides that it is governed by Connecticut law. The law governing the agency issue, however, may be different from that which governs construction of the contract. *See* Restatement (Second) of Conflict of Laws § 292 cmt. f & reporter's note (1971). USPro has not addressed the choice-of-law issue but, in its brief opposing Hirschfeld Properties' motion to dismiss, cites the Restatement (Second) of Agency, as well as cases applying Pennsylvania, Connecticut, and New Jersey law. A cursory review indicates that these states all follow the Restatement approach with respect to this issue, and

contract as long as the principal is not expressly excluded as a party by the terms of the agreement. *See* Restatement (Second) of Agency § 149 (1958). Moreover, contrary to Hirschfeld Properties' suggestion, the inclusion of an integration clause in the contract does not preclude, as a matter of law, the principal's liability for breach of contract under such agency principles. As the Restatement makes clear, "the fact that the agent appears to be a party and that the principal's name does not appear in the integrated instrument is not sufficient to exclude the principal as a party." *Id.* § 150 cmt. b.

Hirschfeld Properties argues that USPro's allegations are not sufficient to support a finding that an agency relationship existed between Hirschfeld Properties and DIG-HP when USPro entered into the contract with DIG-HP.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1(1). "The existence of an . . . agency [relationship] is essentially a question of fact the proof of which is generally found in the acts and conduct of the parties." *Leary v. Johnson*, 267 A.2d 658, 660 (Conn. 1970). Essential to the finding of agency is "that the agent is doing something at the behest and for the benefit of the principal," *id.*, and that the principal has the right "to direct and control the performance of the work by the agent," *McLaughlin v. Chicken Delight, Inc.*, 321 A.2d 456, 459 (Conn. 1973).

Here, USPro has sufficiently pleaded the existence of an agency relationship between

therefore I need not decide which law governs. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (asserting that under Pennsylvania's choice-of-law rules, "[i]f two jurisdictions' laws are the same, . . . a choice-of-law analysis is unnecessary"). Because both parties have cited Connecticut law, I will do so here, but I will give the parties the opportunity to further address the choice-of-law issue should it later become relevant.

7

Hirschfeld Properties and DIG-HP to support a breach-of-contract claim against Hirschfeld Properties as principal. USPro alleges that Hirschfeld Properties awarded the project to USPro and that the two parties executed an agreement concerning the project (Am. Compl. ¶¶ 10–11); that Hirschfeld Properties authorized USPro to begin work on the project and that USPro agreed to accept Hirschfeld Properties' "forthcoming contract form" (*id.* ¶ 12); and that the contract that Hirschfeld Properties sent to USPro repeated the terms of the earlier agreement between the two parties but that "Hirschfeld Properties authorized DIG-HP to execute the contract on its behalf" (*id.* ¶ 14). These allegations, if true, support an inference of an agency relationship between Hirschfeld Properties and DIG-HP.

Moreover, the conduct of the parties during the course of performance of the contract, as alleged by USPro, further supports an inference that an agency relationship existed. Although DIG-HP executed the contract, Hirschfeld Properties dominated the transaction, and all communications concerning the project were between USPro and Hirschfeld Properties. (*Id.* ¶ 50.) USPro alleges that Hirschfeld Properties ordered USPro to match the color of a mock-up balcony (*id.* ¶ 19), that Hirschfeld Properties refused to issue a change order and threatened to withhold payment or terminate the contract if USPro failed to provide such color-matching services (*id.* ¶ 23), that Hirschfeld Properties negotiated and accepted the terms of a change order issued by DIG-HP directing USPro to furnish and install caulking (*id.* ¶ 27), and that Hirschfeld Properties "unilaterally terminated the contract" (*id.* ¶ 31).

Hirschfeld Properties contends that such post-contract-formation conduct "is insufficient as a matter of law to establish that . . . a principal-agency relationship existed between Hirschfeld Properties and DIG-HP at the time of contract formation." (Reply Mem. of Law in Support of

Mot. to Dismiss of Def. Hirschfeld Properties, LLC ("Hirschfeld Properties' Reply Br.") at 6 n.3.) While the fundamental question remains whether DIG-HP entered into the contract as an agent for Hirschfeld Properties, allegations that an agency relationship existed after DIG-HP executed the contract are relevant here—particularly at the motion-to-dismiss stage, before discovery—and, together with USPro's other allegations, support an inference that an agency relationship existed when the contract was executed.

Hirschfeld Properties further argues that even if USPro has sufficiently pleaded the existence of an agency relationship, it has not alleged sufficient facts to support a finding that Hirschfeld Properties was a "disclosed" or "partially disclosed" principal, as contemplated in section 149 of the Restatement. *See* Restatement (Second) of Agency § 4 (defining the terms "disclosed principal," "partially disclosed principal," and "undisclosed principal"). Hirschfeld Properties asserts that USPro's amended complaint "does not include any allegation that, when the contract was entered into, DIG-HP identified itself to [USPro] as an agent for Hirschfeld Properties or identified Hirschfeld Properties as its principal." (Hirschfeld Properties' Reply Br. at 6.)

This argument, however, misses the mark. First, it is not necessary that the agent or the principal explicitly identify the principal in order for the principal to be "disclosed"; a contract party's notice of the existence and identity of the principal may come from other sources, including the conduct of the principal and agent. *See* Restatement (Second) of Agency § 4 cmt. d & illus. 4.[5] Second, the general rule that a principal is liable for the contracts of its agent applies

---

[5] As explained in comment d,
If the manifestations of the principal or agent are such as reasonably to indicate to the other party the identity or existence of the principal, the latter is disclosed or partially

even where the principal is undisclosed when the contract is executed. *See* Restatement (Second) of Agency §§ 186, 190. Thus, even if USPro did not become aware of an agency relationship between Hirschfeld Properties and DIG-HP until sometime after the execution of the contract, Hirschfeld Properties could still be bound by the contract as principal.

USPro has alleged sufficient facts to support its breach-of-contract claims against Hirschfeld Properties as principal. Further, given the factual nature of the agency inquiry, the Third Circuit has "held that discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack." *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003) (not precedential) (citing *Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 865 (3d Cir. 1977)). Accordingly, I will deny Hirschfeld Properties' motion to dismiss the breach-of-contract claims.

### B. Tortious Interference

USPro claims in the alternative that, to the extent that Hirschfeld Properties is not considered a party to the contract between USPro and DIG-HP, Hirschfeld Properties tortiously interfered with the contract. Hirschfeld Properties asserts that USPro has failed to state a claim for tortious interference, arguing that USPro has made "no allegation that Hirschfeld [Properties] induced or caused the other contracting party—DIG-HP—to breach its contract" with USPro. (Mem. of Law in Supp. of Mot. to Dismiss of Def. Hirschfeld Properties, LLC at 7.)

---

disclosed . . . . If the manifestation as to agency is ambiguous, the belief of the other party, if reasonable, is conclusive.

Restatement (Second) of Agency § 4 cmt. d. In illustration 4, P is a party to a contract between A and T, as a disclosed principal, where A does not tell T that he is acting for P but T nonetheless knows that A is acting as an agent for P, and T intends to deal with P through A.

The Restatement (Second) of Torts recognizes two separate causes of action for intentional interference with an existing contract: section 766 addresses an "actor's intentional interference with a third person's performance of his existing contract with the plaintiff"; section 766A, by contrast, "is concerned . . . with the actor's intentional interference with the plaintiff's performance of his own contract, either by preventing that performance or [by] making it more expensive or burdensome." Restatement (Second) of Torts § 766A cmt. a.[6]

Here, USPro alleges that Hirschfeld Properties interfered with USPro's own performance of the contract. USPro alleges, for example, that Hirschfeld Properties demanded that USPro perform extra work without additional compensation and that "Hirschfeld Properties' threats and intimidation tactics made it impossible for USPro to complete the [p]roject in accordance with the contract," and suggests that it was USPro's inability to complete the project that "caused USPro to suffer a loss of payment for work completed." (Am. Compl. ¶¶ 57–58.)

Pennsylvania, however, does not appear to have recognized the tort of intentional interference with the plaintiff's performance of his own contract, although it does recognize a claim for tortious interference with a third party's performance.[7] *See Gemini Physical Therapy &*

---

[6] As the Restatement explains, under section 766, "the plaintiff's interest in obtaining performance of the contract is interfered with directly." Restatement (Second) of Torts § 766A cmt. c. Under section 766A, on the other hand, "the interference is indirect, in that the plaintiff is unable to obtain performance of the contract by the third person because he has been prevented from performing his part of the contract and thus from assuring himself of receiving the performance by the third person." *Id.* Section 766A also provides for liability to the extent that "the plaintiff's performance has intentionally been made more burdensome or more expensive by the actor, [and as a result,] the cost that he incurs in order to obtain the performance by the third party has increased, and the net benefit from the third person's performance has been correspondingly diminished." *Id.*

[7] The parties have not fully addressed the question of which state's laws govern this claim. Hirschfeld Properties asserts, without analysis, that Pennsylvania law governs this claim.

*Rehabilitation, Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 66 (3d Cir. 1994) (noting that although Pennsylvania has adopted section 766 of the Restatement, Pennsylvania has not adopted section 766A, and concluding that the Pennsylvania Supreme Court was not likely to adopt that section to the extent that it imposes liability merely for making a plaintiff's performance of his contract more expensive or burdensome). *But see P.V.C. Realty v. Weis Mkts., Inc.*, 56 Pa. D. & C.4th 304, 337–39 (Pa. Ct. C.P. Cambria Cnty. 2000) (finding no reason why Pennsylvania courts would not recognize section 766A, at least to the extent that it imposes liability for preventing the plaintiff from performing his contract). The Third Circuit's decision in *Gemini* is, of course, binding on this court, and I must thus conclude that USPro has not stated a cognizable claim. Accordingly, I will dismiss this claim.

## III. CONCLUSION

For the reasons set forth above, I will deny Hirschfeld Properties' motion to dismiss the breach-of-contract claims, but I will grant Hirschfeld Properties' motion to dismiss the claim of tortious interference with a contractual relation.

An appropriate order accompanies this memorandum.

---

USPro asserts that "[f]or the limited purpose of responding to Hirschfeld Properties' motion to dismiss . . . , USPro assumes, but does not admit, that Pennsylvania law applies." (Br. in Opp'n to Mot. to Dismiss at 8 n.2.) Because both parties have assumed, for purposes of the motion to dismiss, that Pennsylvania law governs, I will apply Pennsylvania law here.